**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Cota, ) | No. CV-10-1024-PHX-GMS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Toni Brown, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Defendant Toni Brown's Motion for Summary Judgment. (Doc. 65). For the reasons discussed below, the motion is granted.

**BACKGROUND**

On September 20, 2006, Plaintiff Jose Cota entered a Wells Fargo Bank branch located at 850 E. Greenway Road in Phoenix with along with Glenna Standley, then 82 years old and confined to a wheelchair. (Doc. 5 ¶¶ 3–4). Mr. Cota had been living with Ms. Standley, for whom he served as a caregiver, for approximately 10 years. Earlier that week, $55,000 had been wired into Ms. Standley's account at Wells Fargo by her neighbor in exchange for a parcel of land. (Doc. 66, Ex. F). Mr. Cota told a teller at the bank that he and Ms. Standley wanted to invest the proceeds of the sale, and the teller recommended that they invest in a $50,000 Certificate of Deposit ("CD"). (Doc. 68 at 9). Part of the reason the teller recommended a CD, which would prevent anyone from withdrawing the funds immediately without a penalty, was that he was suspicious of Mr. Cota, because he "did all the talking for

1  her" and that Ms. Standley "didn't look like she was there, competent-wise." (*Id.*).
2  Furthermore, Ms. Standley's account only had her son listed as a co-signer, and because Mr.
3  Cota was Hispanic while Ms. Standley was white, the teller concluded that he was not related
4  to her. (*Id.*). Mr. Cota further stated that he wanted to withdraw $10,000 in cash, which
5  concerned the teller. The teller consulted with his manager, and responded to Mr. Cota that
6  he could provide $5,000 immediately, and that Mr. Cota could withdraw $5,000 more at a
7  later date. (*Id.* at 10). The teller asked Mr. Cota for two forms of ID, but Mr. Cota only had
8  one, so he returned home to obtain another ID. Ms. Standley waited at the bank. While Ms.
9  Standley was waiting, the teller spoke to her, and felt that she "was just all confusion." (*Id.*
10 at 11). Because of Ms. Standley's inability to answer simple questions, the teller contacted
11 his supervisor, who in turn contacted a Wells Fargo Vice President in the Corporate Security
12 Department. (Doc. 65 ¶¶ 1–6). Mr. Cota returned to the bank, obtained the $5,000, and asked
13 the teller how to get access to the $50,000 in the CD. (Doc. 68 at 12). The teller "just stalled
14 him" by telling him to wait twenty-four hours and return. (*Id.*). Mr. Cota and Ms. Standley
15 left with the $5,000.

16       The next morning, Wells Fargo contacted Detective Toni Brown of the Phoenix
17 Police Department. (Doc. 65 ¶ 1). Detective Brown, along with Detective Robert Furneaux,
18 who also worked for the Phoenix Police Department, went to Ms. Standley's home. Mr. Cota
19 and Ms. Standley were present, although Ms. Standley was asleep. The officers entered, and
20 found a significant amount of musical equipment, including many hand-crafted guitars made
21 by Mr. Cota. (Doc. 68 at 2). Mr. Cota informed the officers that he and Ms. Standley were
22 in business together to produce and sell the guitars. (Doc. 65 ¶ 35). When asked about the
23 visit to Wells Fargo the day before, he stated that he and Ms. Standley had taken out the
24 money in connection with the guitar business. Detectives searched the house and found a
25 total of $4,942. (Doc. 65 ¶ 51). Detective Brown arrested Cota for financially exploiting a
26 vulnerable adult. (Doc. 65 ¶ 58). After Detective Brown arrested Cota and took him away,
27 Detective Fruneaux interviewed Standley, who was unable to remember her children's
28 names, the city in which she lived, or whether she had been to the bank the day before. (Doc.

1  65 ¶ 72). She stated that she had not sold any property recently, was not in business with
2  Cota, and that the only money she had ever given him for his guitar business was $1,000
3  many years before. (*Id.*).

4  Detective Brown testified about her investigation before a Grand Jury on October 2,
5  2006. (Doc. 66, Ex. H). She stated that during Cota and Standley's visit to the bank, Cota
6  had attempted to withdraw the entire $55,000. She does not mention the CD. (*Id.*). On
7  January 21, 2009, Cota was found not guilty after a jury trial, and filed this lawsuit on
8  January 20, 2010. (Doc. 65 ¶ 158–59). Some claims against the State of Arizona, Maricopa
9  County, the City of Phoenix, Detective Furneaux, and the prosecutor at Cota's criminal trial
10 were dismissed on November 10, 2010. (Doc. 25). Further claims were dismissed pursuant
11 to stipulation on February 24, 2011. (Doc. 38).

12 The only remaining claims are that Detective Brown violated Cota's Fourth and
13 Fourteenth Amendment rights when she entered the home without a search warrant and
14 arrested him, that her Grand Jury testimony constituted an abuse of process, and that she is
15 liable in negligence or gross negligence for conducting an unreasonable investigation. (Doc.
16 1-1). Detective Brown moved for summary judgment on October 28, 2011.

## DISCUSSION

### I. Legal Standard

19 Summary judgment is appropriate if the evidence, viewed in the light most favorable
20 to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact
21 and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive
22 law determines which facts are material and "[o]nly disputes over facts that might affect the
23 outcome of the suit under the governing law will properly preclude the entry of summary
24 judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[A] party seeking
25 summary judgment always bears the initial responsibility of informing the district court of
26 the basis for its motion," including identifying portions of the record that demonstrate the
27 absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
28 (1986).

1  Once the moving party has detailed the basis for its motion, the party opposing 2 summary judgment "may not rest upon the mere allegations or denials of [the party's] 3 pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." 4 Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 5 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); 6 *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A fact issue is genuine 'if the evidence 7 is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v.* 8 *Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 9 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved 10 only by a finder of fact *because they may reasonably be resolved in favor of either party.*'" 11 *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th 12 Cir. 1987) (quoting *Anderson*, 477 U.S. at 250; emphasis in original). "[A]t the summary 13 judgment stage the judge's function is not himself to weigh the evidence and determine the 14 truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 15 U.S. at 249. The Ninth Circuit "has refused to find a genuine issue where the only evidence 16 presented is uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 17 281 F.3d 1054, 1061 (9th Cir. 2002) (internal quotations omitted).

18 **II.   Analysis**

19  Defendant has submitted a statement of 117 undisputed facts, supported by 13 20 exhibits. (Docs. 65–66). Plaintiff has not submitted a statement contesting these facts, and 21 has not submitted his own statement of facts. Instead, he has included a six-page statement 22 detailing the allegations in the complaint and including some new allegations. (Doc. 68). 23 Attached are a number of documents, including some police department documents, some 24 trial documents, and extensive documentation and photography of Plaintiff's custom-made 25 guitars, including his numerous patents. (Doc. 68). Indeed, from Plaintiff's submission it 26 appears that he is principally concerned with the loss of his guitars and his tools for 27 manufacturing those guitars. In his response to the motion, Plaintiff states (for the first time) 28 that Detective Brown objected to having the guitars released to a friend of Plaintiff's while

1 Plaintiff was incarcerated, and that she manipulated photographs of the guitars, providing
2 him with only blurry copies of them. (Doc. 68 at 4–5).

3      In his complaint, however, Plaintiff attributed the loss of his property only to the
4 Phoenix Police Department generally, writing that the "PPD negligently sold Jose's property
5 at auction or otherwise negligently disposed of it or negligently permitted it to be disposed
6 of." (Doc. 1-1 ¶ 32). He made no allegation that Detective Brown played any part in selling
7 or disposing of the equipment, and points now to no evidence in the record that she did so.
8 In fact, Plaintiff makes a number of claims in his response that are not grounded by citations
9 to any evidence in the record, such as a claim that Detective Brown kept documents vital to
10 his prosecution in the trunk of her car while she "went on tour all over the nation teaching
11 seminars to other police departments." (Doc. 68 at 4). The Court cannot find a genuine issue
12 of fact and denies summary judgment "where the only evidence presented is uncorroborated
13 and self-serving testimony." *Villiarimo*, 281 F.3d at 1061. Allegations in Plaintiff's response
14 that are not supported in the record cannot serve as the basis for a denial of summary
15 judgment. With this fact in mind, Defendant's claims will be addressed in turn.

16      Defendant argues that Plaintiff's claims are untimely, while Plaintiff argues that
17 relevant statutes of limitations ought to be tolled. The Court need not consider whether the
18 circumstances of this case merit tolling of the statutes of limitations, because the claims fail
19 on the merits in any event.

20      **A.**     **Fourth Amendment**

21      Plaintiff claims that Detective Brown entered his house without a warrant in violation
22 of the Fourth Amendment on September 21, 2006. (Doc. 1-1, Ex. A at 5). In her initial police
23 report, Detective Brown wrote that Cota "unlocked the gate and allowed us to come inside
24 the residence to speak with himself and V1-Glenna." (Doc. 66, Ex. B-1 at 5). At trial,
25 Detective Brown stated that she asked Plaintiff permission to enter and that he granted her
26 permission. (Doc. 66 Ex. D). Plaintiff does not point to any evidence in the record to dispute
27 this fact. He does not appear to have filed any motion to have evidence obtained pursuant to
28 the search excluded. In his response, he writes "Toni Brown told me to unlock the chain link

- 5 -

1 fence gate and let them in the house because they needed to talk to me. . . . Toni Brown
2 insisted so I let them in." (Doc. 68 at 2). Whether or not consent to a search is given
3 voluntarily, and is therefore valid, depends on whether "a defendant's will was overborne .
4 . . assess[ing] the totality of all the surrounding circumstances." *Scneckloth v. Bustamonte*,
5 412 U.S. 218, 226 (1973). Plaintiff, even in his unsworn response, states only that Detective
6 Brown "insisted" he let her in, which does not suggest his will was overborne.

### B. Grand Jury Testimony and Investigation

Detective Brown's Grand Jury testimony admittedly varies from what the bank teller stated to police. Detective Brown states that Cota tried to withdraw the entire $55,000, while the teller recounted that Cota opened a CD for $50,000, tried to withdraw $10,000, and once he was told he could only withdraw $5,000, asked how he could get access to the money that was in the CD. (Doc. 68 at 12; Doc. 66, Ex. H). This discrepancy is not significant, since it is not disputed that the teller called the bank supervisors, who in turn notified police. Plaintiff has pointed to no evidence that creates a genuine issue of fact regarding Detective Brown's motives, and without an improper motive Detective Brown cannot be liable for an abuse of process claim. *See Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982) (an abuse of process claim requires "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings"). Moreover, the Supreme Court has recently held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, ___ S.Ct. ___ at 12 (April 3, 2012) (No. 10-788). Likewise, Plaintiff has pointed to no evidence that creates a genuine issue of fact as to whether Detective Brown's investigation was grossly negligent; on the contrary, as Defendant notes, the judge in Plaintiff's criminal case denied a Rule 20 motion for dismissal, finding that the investigation had produced sufficient evidence for a reasonable jury to convict him. (Doc. 66, Ex. O). The fact that he was eventually found not guilty does not suggest that the investigation was conducted in a grossly negligent manner or that it constituted an abuse of process.

Plaintiff has offered no evidence that creates a genuinely disputed fact as to his

complaint's underlying merits. *See Matsushita*, 475 U.S. at 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

## CONCLUSION

Plaintiff has pointed to no evidence demonstrating that there is a genuine issue as to the merits, and his complaint would therefore be dismissed on the merits in any event.

**IT IS THEREFORE ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 65) is **granted**.

2. The Clerk of Court shall **terminate** this action.

DATED this 5th day of April, 2012.

_A. Murray Snow_
G. Murray Snow
United States District Judge

- 7 -